**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | |
|---|---|
| **TONEY L. OVERSTREET,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 7:16-cv-585** |
| ) | |
| **NANCY A. BERRYHILL,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Toney L. Overstreet ("Overstreet") filed this action challenging the final

decision of the Commissioner of Social Security ("Commissioner") determining that he was not

disabled and therefore not eligible for supplemental security income ("SSI") under the Social

Security Act ("Act").  42 U.S.C. §§ 1381-1383f.  Specifically, Overstreet alleges that the ALJ

failed to adequately address his limitations with concentration, persistence and pace; failed to

properly evaluate the opinion of his treating physician; failed to properly assess his impairments

on a function by function basis; and failed to provide sufficient reasons for his credibility

analysis. I conclude that substantial evidence supports the ALJ's decision as a whole.

Accordingly, I **RECOMMEND DENYING** Overstreet's Motion for Summary Judgment (Dkt.

No. 14), and **GRANTING** the Commissioner's Motion for Summary Judgment.  Dkt. No. 18.

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence supports

the Commissioner's conclusion that Overstreet failed to demonstrate that he was disabled under

the Act.[1] <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001).  "Substantial evidence is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it

consists of more than a mere scintilla of evidence but may be somewhat less than a

preponderance."  <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted).

The final decision of the Commissioner will be affirmed where substantial evidence supports the

decision.  <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Overstreet filed for SSI on November 7, 2012, claiming that his disability began on

January 1, 2008. Administrative Record, hereinafter "R." 12.  The Commissioner denied the

application at the initial and reconsideration levels of administrative review. R. 83–87, 91–93.  On

July 1, 2015, ALJ David Lewandowski held a hearing to consider Overstreet's disability claim.

R. 35–60.  Overstreet was represented by an attorney at the hearing, which included testimony

from Overstreet and vocational expert Robert Jackson. <u>Id.</u>

On July 30, 2015, the ALJ entered his decision analyzing Overstreet's claim under the

familiar five-step process,[2] and denying Overstreet's claim for benefits. R. 12–30.  The ALJ

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work.  Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience.  <u>See</u> 42 U.S.C. § 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work.  <u>Johnson v. Barnhart</u>, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460–62 (1983).  The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability.  The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); <u>Taylor v. Weinberger</u>, 512 F.2d 664, 666 (4th Cir. 1975).

found that Overstreet suffered from the severe impairments of chronic obstructive pulmonary

disease (COPD), lumbrosacral degenerative disc disease, degenerative joint disease of the hands

and feet, right knee osteoarthritis, obesity, bipolar disorder, anger disorder, cluster B traits,

personality disorder, and paranoia. R. 14. The ALJ found that these impairments did not meet or

medically equal a listed impairment. R. 15–17.  The ALJ further found that Overstreet had the

residual functional capacity ("RFC") to perform light work, except that he can frequently balance

and climb stairs, and occasionally stoop, kneel, crouch or crawl. R. 17.  The ALJ found that

Overstreet should avoid exposure to pulmonary irritants, and industrial hazards. Id.  The ALJ

determined that Overstreet is capable of understanding, remembering, and carrying out simple

instructions and performing simple tasks, with occasional interaction with others. Id.  The ALJ

determined that Overstreet could not return to his past relevant work as a carpenter and boiler

room worker, but that he could work at jobs that exist in significant numbers in the national

economy, such as marker or inspector/grader. R. 28–29.  Thus, the ALJ concluded that he was

not disabled.

Overstreet requested that the Appeals Council review the ALJ's decision. On November

10, 2016, the Appeals Council denied Overstreet's request for review (R. 1–5), and this appeal

followed.

## ANALYSIS

### Concentration, Persistence and Pace

Overstreet asserts that the mental limitations set forth in the RFC of understanding,

remembering and carrying out simple instructions and performing simple tasks do not adequately

account for his moderate limitations with concentration, persistence and pace. Pl. Br. Summ. J. at

10.  Overstreet asserts that "simply limiting plaintiff to 1-3 step tasks with on-complex work

instructions in his RFC assessment does not address limitations in concentration, persistence, or

pace and is not enough to fulfill SSR 96-8p." Pl. Br. Summ. J. at 13. See Titles II & Xvi:

Assessing Residual Functional Capacity in Initial Claims, Social Security Ruling ("SSR") 96-8p,

1996 WL 374184 (S.S.A. July 2, 1996). Overstreet further argues that the ALJ failed to include

his moderate limitations in concentration, persistence, or pace in the hypothetical to the

vocational expert. Id. at 14

SSR 96-8p requires the ALJ to include a narrative discussion describing how the

evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-

2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative

discussion describing how the evidence supports each conclusion, citing specific medical facts

(e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR

96-8p at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15,

2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)).

Here, the ALJ's discussion of Overstreet's mental limitations satisfies the requirements of

SSR 96-8p. The ALJ considered both medical and non-medical evidence in assessing

Overstreet's RFC and provided the narrative discussion required by the regulations. The ALJ

reviewed the history of Overstreet's mental symptoms and his mental health treatment in detail.

R. 17–25.  The ALJ then summarized the evidence relating to Overstreet's mental health

symptoms and treatment, and noted that "[a]fter going back to jail, the claimant did seek regular

treatment for mental health issues, but treatment notes suggest that the combination of

medications and regular monitoring was generally successful in maintaining the claimant's

psychiatric stability." R. 26. The ALJ also reviewed the opinion evidence, including a statement

from Overstreet's case manager that he has "mental health issues," the opinion of a state agency

psychological consultant, and a review of the GAF scores[3] assigned by his treating physician.
R. 26–27. Thus, the ALJ's narrative discussion considering the medical opinions, Overstreet's
testimony, and evidence of mental impairment satisfied the requirements of SSR 96-8p. See
Taylor v. Astrue, No. 11-cv-32, 2012 WL 294532, at *6 (D. Md. Jan. 31, 2012) (noting that
while SSR 96-8p requires an ALJ to consider the evidence presented on a function-by-function
basis, it does not require the ALJ to produce such a detailed statement in writing, but rather is
sufficient if it includes a narrative discussion of the claimant's symptoms and medical source
opinions).

Overstreet argues that the RFC set forth by the ALJ failed to properly account for his
limitations with concentration, persistence and pace. In Mascio v. Colvin, the Fourth Circuit held
that an ALJ does not generally account for a claimant's limitations in concentration, persistence,
and pace by restricting the claimant to simple, routine tasks or unskilled work. The court noted,
"the ability to perform simple tasks differs from the ability to stay on task. Only the latter
limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. at
638; see also Sexton v. Colvin, 21 F. Supp. 3d 639, 642–43 (W.D. Va. 2014) (citing Wiederholt
v. Barnhart, 121 Fed. Appx. 833, 839 (10th Cir. 2005)). The court noted, however, that the ALJ
may find that the concentration, persistence or pace limitation would not affect a claimant's
ability to work, in which case it would have been appropriate to exclude it from the hypothetical
tendered to the vocational expert. 780 F.3d at 638; see also Hutton v. Colvin, No. 2:14-cv-63,
2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015). The court found error in Mascio because
the ALJ did not explain why Mascio's moderate limitation in concentration, persistence, or pace
did not translate into a limitation in his RFC.

---

[3] The GAF Scale is used to rate overall psychological functioning on a scale of 0 to 100. American
Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

The Mascio decision does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace must always translate into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the disability decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence or pace limitation does not affect the claimant's ability to perform simple, unskilled work. The ALJ has the responsibility to address the evidence of record that supports that conclusion, and ensure that the hypothetical presented to the vocational expert includes all of the limitations set forth in the RFC.

The Mascio court relied upon Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011), where the court rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the claimant to simple, routine tasks or unskilled work. However, the Winschel court explained that:

> when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.

Id. (internal citations omitted). Courts within the Fourth Circuit have come to rely upon Winschel's reasoning to comply with Mascio. See St. Clair v. Colvin, No. 7:13cv571, 2015 WL 5310777, at * 7 (W.D. Va. Sept. 11, 2015) (ALJ properly relied upon the opinion of consultative physician that plaintiff's impairment in concentration, persistence and pace did not prevent him from performing simple, repetitive tasks); Del Vecchio v. Colvin, No. 1:43cv116, 2015 WL 5023857 at * 5 (W.D.N.C. Aug. 25, 2015) (ALJ's reliance upon the opinion of state agency medical consultant that plaintiff could complete simple tasks even with moderate limitations in

concentration, persistence, or pace satisfied the explanation necessary to support the RFC

limitations); Geisler v. Comm'r, No. SAG-14-2857, 2015 WL 4485459, at *5 (D. Md. July 21,

2015) (ALJ properly relied on the opinions of state agency physicians that plaintiff's impairment

in concentration, persistence or pace does not prevent him from performing simple, spoken

instructions and simple routine tasks). Likewise, in Hutton v. Colvin, the court held that a

restriction of "unskilled work" accounted for claimant's limitations with concentration,

persistence or pace where the ALJ examined the claimant's ability to perform daily activities

such as paying bills and counting change in the step 4 analysis, and noted that his treating

physicians found that he exhibited good attention, intact memory, logical thought flow, and good

immediate and recent memory. 2015 WL 3757204, at *3–5. The court found that these reasons

constituted "abundant explanation" for the ALJ's RFC findings regarding the claimant's

concentration limitations, and thus, there was no error in the ALJ's conclusion that the claimant

could perform unskilled work. Id.

     Thus, Mascio reiterates the long-held proposition that substantial evidence in the record

must support the limitations contained in the RFC and those limitations must be included in the

hypothetical question presented to the vocational expert. An ALJ may account for a claimant's

limitation with concentration, persistence, or pace by restricting the claimant to simple, routine,

unskilled work where the record supports this conclusion, either through physician testimony,

medical source statements, consultative examinations, or other evidence that is sufficiently

evident to the reviewing court.

     Here, substantial evidence supports the ALJ's decision that despite Overstreet's

limitations in concentration, persistence, or pace, he was capable of carrying out simple

instructions and performing simple tasks, with occasional interaction with others.

Overstreet is a registered sex offender and has a long history of incarceration. Overstreet claims that he is unable to work due to depression, anxiety and emphysema. In his function reports, Overstreet reported difficulties with concentration, paranoia, mood lability, flashbacks, and nervousness around others. R. 216–22. Overstreet reported that his poor concentration and memory loss cause him to forget where he is going when driving and that he would be unable to remember when bills are due if he had money. R. 218. Overstreet also reported several suicide attempts. R. 222. Overstreet testified at the administrative hearing via telephone from prison, and stated that he sees a psychiatrist, and takes Seroquel and Depakote for bipolar disorder and depression. R. 47–48. He complained of rapid mood swings and difficulty concentrating. R. 48–50.

With regard to Overstreet's treatment records, the majority of Overstreet's medical treatment was sought at the emergency room, and his mental health impairments were not the focus of those visits. The emergency room treatment notes reflect that he was consistently alert and oriented and his mood and affect were normal. R. 265–280, 281–301, 351–68, 370–95, 396–400.

On October 17, 2011, Overstreet visited Blue Ridge Behavioral Healthcare for a mental health assessment. R. 248. The assessor, Kevin Lynch, noted that Overstreet was very vague when answering questions and changed the information he was giving several times. Id. Overstreet stated that he received mental health treatment when previously incarcerated for anger and behavioral issues, but could not state his diagnosis. He reported that he was attempting to apply for disability due to mental issues. Id. Lynch did not refer Overstreet for further treatment. Id.

On August 29, 2013, Gail Valentine, a case manager with the Lynchburg Division of

Child Support Enforcement's Intensive Case Monitoring Program, wrote a letter "To Whom It

May Concern," stating that her job is to assist Overstreet with barriers that affect his ability to

pay child support. R. 215.  Ms. Valentine helped Overstreet complete his social security

disability function report and stated, "[d]uring the time I've spent with him it is obvious he has

mental health issues.  He will be going to Johnson's Health Center in a few weeks to turn in his

eligibility paperwork.  I hope he can receive a diagnosis at that time." Id.

On January 13, 2014, Overstreet was evaluated by Susan Lee, D.O., for psychiatric

intake, reporting that he had difficulty with mood regulation, paranoid ideation and psychotic

thoughts. R. 304. Dr. Lee noted that Overstreet has a difficulty putting a lot of thoughts together

and has a long history of incarceration. He reported being in mental hospitals multiple times and

that he might have bipolar disorder.  Upon exam, Overstreet was pleasant and boisterous; he

sometimes laughed inappropriately; he was quite loud; his speech was circumstantial and his

mood was mildly grandiose. Id.  Dr. Lee noted poor impulse control and poor judgment. Id.  Dr.

Lee noted that Overstreet's records suggest that he hears voices although he somewhat responds

to internal stimuli but it is "hard to tell." Id.  Dr. Lee diagnosed suspected bipolar disorder,

cyclothymia and ADHD and recommended a mood stabilizer and /or antipsychotic. Id.

Overstreet returned to see Dr. Lee on February 17, 2014, and reported smoking marijuana

daily. R. 303.  Overstreet stated that he has a lot of intrusive thoughts but understands

consequences and does not want to end up back in jail. Overstreet displayed an emotional range

and appeared significantly prone to anger and mood disturbance.  He was somewhat boisterous

and pleasant with a minor subtle sinister quality.  He continued to have circumstantial thought

processes, mild grandiosity, poor impulse control and historically poor judgment. Dr. Lee

suspected bipolar disorder, cluster B traits and continued his medication. Id.

Overstreet followed up with Dr. Lee on March 10, 2014, May 21, 2014 and September 8,

2014. On those visits he was calmer, his speech was logical and linear, he had less religiosity,

less antisocial references, reasonable impulse control and no evidence of responding to internal

stimuli. R. 302, 402, 403. Dr. Lee noted that Overstreet remained stable on Seroquel, and has a

sharp sense of humor and keen insights into human nature. R. 402.

On October 15, 2014, Overstreet underwent a mental health assessment in jail, after being

sentenced to one year of incarceration for failure to pay child support. R. 308–16. Overstreet

reported mood swings, anger at being locked up and depression. R. 308. Overstreet stated, "I

scream and holler, break things, threaten to harm others, punch walls." R. 316. Upon exam,

Overstreet had normal appearance, behavior, speech, thought process, and perceptions. R. 312.

His mood was anxious, depressive and irritable, and his judgment/insight was poor and

impulsive. Id. The jail counselor diagnosed bipolar disorder and antisocial personality disorder

and prescribed Depakote and Seroquel. R. 313–14.

Overstreet followed up with the jail counselor on November 21, 2014, and reported angry

episodes, mood swings, depression and increasing paranoia. R. 319. Upon examination,

Overstreet was alert, well-groomed, cooperative, with appropriate behavior, verbal, fluent and

coherent speech, euthymic mood, full affect, logical linear thought processes with flight of ideas,

and thought content within normal limits. Id. The counselor assessed bipolar disorder and

personality disorder, and continued his medications. R. 320. Overstreet again followed up on

January 14, 2015, and reported doing fairly well. R. 335. He had difficulty being around others

and felt more comfortable staying in his cell. Overstreet reported difficulty falling asleep and

some irritability.  He presented with even mood, normal speech, good eye contact, and was alert and oriented.  Id.  On January 29, 2015, Overstreet reported doing well with current medications, and his mental status examination was unremarkable. R. 332–33.  On February 25, 2015, Overstreet was transferred to a new facility and was adjusting well. R. 334.  He reported doing well on current medications and was experiencing some shaking in his hands.  Overstreet reported sleeping "off and on," and presented with even mood, normal speech, good eye contact, and was alert and oriented. Id.   On May 29, 2015, Overstreet state he was doing well on current mediations with the exception of difficulty staying asleep, mainly due to pain issues. R. 410.  Overstreet reported some shaking in his hands, and had an even mood, normal speech, good eye contact and was alert and oriented. Id.

On May 15, 2013, state agency psychological consultant David Deaver, Ph.D., reviewed Overstreet's records and determined that he had no mental impairment. R. 65. Dr. Deaver noted that Overstreet was not taking any medications for any psychological abnormalities and had a stable mental status examination recently with no significant abnormalities. Id.   The ALJ gave this opinion little weight because later evidence "confirms the existence of several medically diagnosed mental health impairments, though these do not preclude understanding, remembering and carrying out simple instructions and simple tasks, with occasional interaction with others." R. 27.

The ALJ gave some weight to the GAF scores assigned by Dr. Lee in the aggregate. R. 27.  The ALJ recognized that GAF scores represent a one-time personalized snapshot by a provider, and are not evidence of longitudinal functioning. Id.   Dr. Lee initially assessed Overstreet's GAF as 55, which increased to 65 after medication management.[4]  The ALJ gave

---

[4] A GAF of 51–60 indicates that the person has moderate symptoms, or moderate difficulty in social, occupational or school functioning. A score of 61–70 suggests mild symptoms or some difficulty in social,

little weight to the GAF score of 50 assigned by the jail counselor in Overstreet's initial intake

examination in 2014. R. 27.

Based on the above evidence, the ALJ determined that Overstreet had moderate

difficulties in maintaining concentration, persistence or pace in step three of his analysis. R. 16.

The ALJ noted:

> In function reports, the claimant described frequent lapses in memory and
> concentration (9E, 10E) yet treating providers did not document any observable
> deficits in this domain (9F, 10F, 14F).  The claimant was consistently alert and
> oriented in all domains, without obvious cognitive problems (6F/15, 9F/8).  The
> record as a whole suggests no more than "moderate" difficulties in maintaining
> concentration, persistence, or pace.

R. 16.

In step four of his analysis, the ALJ reviewed Overstreet's testimony, the medical

evidence and the opinion evidence in detail. R. 17–28.  The ALJ noted that Overstreet's

treatment history does not support the degree of limitation alleged. R. 26.  Specifically, in April

2013, Overstreet presented alert and oriented in all spheres, his speech was clear and appropriate,

and his mood and affect were appropriate. The ALJ noted that Overstreet's subsequent treatment

records do not show major changes in his mental status thereafter.  The ALJ recognized that

Overstreet sought regular treatment for mental health issues after going back to jail, but his

treatment notes suggest that the combination of medications and regular monitoring was

generally successful in maintaining Overstreet's psychiatric stability. Id.   Given all of the

evidence, the ALJ concluded that Overstreet was capable of understanding, remembering and

carrying out simple instructions and performing simple tasks, with occasional interaction with

others. R. 17. Thus, unlike in Mascio, the court here is not left to guess at the ALJ's decision-

occupational, or school functioning. DSM-IV.  GAF has been dropped from the Fifth Edition of the DSM, published
in 2013, due in part to its "conceptual lack of clarity" and "questionable psychometrics in routine practice." DSM-V
at 16.  Despite its shortcomings, the GAF was used by Overstreet's providers during the relevant period of alleged
disability and the ALJ discussed his GAF scores.

12

making process. See Gautreau v. Colvin, No. 2:15CV81, 2016 WL 1314314, at *9–10 (E.D. Va.

Feb. 26, 2016), report and recommendation adopted, No. 2:15CV81, 2016 WL 1298122 (E.D.

Va. Mar. 31, 2016), aff'd sub nom. Gautreau v. Berryhill, No. 16-1628, 2017 WL 1423297 (4th

Cir. Apr. 21, 2017).

Further, evidence supports the ALJ's determination that Overstreet was capable of

performing simple tasks with simple instructions, despite his impairment with concentration,

persistence or pace.  Although Overstreet alleges difficulty with memory and concentration, none

of his mental health records reflect complaints to his providers relating to concentration,

persistence or pace.  Likewise, his mental health records contain no objective findings related to

problems with concentration, persistence or pace.  Additionally, no mental health provider or

consultant determined that Overstreet suffered from limitations with concentration, persistence

or pace. The only evidence suggesting that Overstreet has a limitation in concentration,

persistence or pace is Overstreet's subjective statements on his function reports and

administrative hearing testimony.  The ALJ gave Overstreet the benefit of the doubt by

accounting for his subjective complaints of difficulty with concentration and memory by

assigning Overstreet a moderate impairment in concentration, persistence and pace, and limiting

him to work with simple instructions and simple tasks. R. 17.  There is no evidence in the record

that suggests that Overstreet's moderate impairment with concentration, persistence or pace

would prevent him from completing a normal workday or workweek without interruption or

completing work activities on a consistent basis. Rather, the record reflects that Overstreet's

mental health impairments are stable when managed with medication and psychiatric treatment.

Further, the hypothetical question presented to the vocational expert included an

individual who was limited to light exertional work and was able to understand, remember, and

carry out simple instructions and perform simple tasks, with occasional interaction with others. R. 57. The vocational expert testified that such an individual would be capable of performing work as a marker and inspector/grader. Id.  Thus, the vocational expert's opinion was given in response to a proper hypothetical by the ALJ that sets forth all of Overstreet's impairments.

### Function by Function Analysis

Overstreet asserts that the ALJ erred by failing to determine his physical RFC using a function by function analysis as required by SSR 96-8p.  Pl. Br. Summ. J. at 15.  Specifically, Overstreet alleges that the ALJ failed to make specific findings regarding his inability to maintain a static work posture, or his need to lie down during the day. Pl. Br. Summ. J. at 16.

A function by function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work.  Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p. The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

 In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d 632, 636

(4th Cir. 2015) (citing <u>Cichocki v. Astrue</u>, 729 F.3d 172, 177 (2d Cir. 2013)). "The <u>Mascio</u> Court
held remand was necessary, in part, because the ALJ failed to indicate the weight given to two
residual functional capacity assessments which contained relevant conflicting evidence regarding
the claimant's weight lifting abilities." <u>Newcomb v. Colvin</u>, No. 2:14–CV–76, 2015 WL
1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

      Here, the ALJ's opinion meets the standards set by SSR 96-8p. The ALJ's findings
include a detailed summary and analysis of Overstreet's impairments, medical records,
testimony, and opinion evidence. This section of the opinion spans twelve single-spaced pages of
the eighteen-page opinion and discusses Overstreet's symptoms, his resulting limitations,
medical evidence, medical opinions, Overstreet's testimony, his credibility, and conflicting
medical evidence. R. 17–28. The ALJ considered Overstreet's testimony that he can sit for only
20 minutes at a time before needing a break and stand 15–20 minutes before becoming weak and
numb. R. 19. The ALJ also considered Overstreet's testimony that he would lie down for 20–30
minutes a day before being incarcerated, and laid down most of the day while incarcerated. <u>Id.</u>
After reviewing Overstreet's medical evidence and the physician opinions, the ALJ determined
that Overstreet's daily activities were not as limited as he alleged.  R. 25–26.  The ALJ noted that
Overstreet's treatment records reflect that he can move all extremities, ambulate independently
and with a steady gait, has no respiratory abnormalities, had mild range of motion deficits during
the consultative examination with Dr. Humphries and had no evidence of motor or sensory loss.
R. 26.  The ALJ found that although the evidence reflects that Overstreet has "severe"
impairments, it also establishes that he retains the capacity to perform many work activities. R.
28.  The ALJ discussed the medical opinion evidence, described the weight given to each
opinion and provided reasons for the weight assigned to each opinion. R. 27–28.  The ALJ

described the maximum amount of each work-related activity that Overstreet can perform in his

RFC assessment, and did not fail to resolve any material inconsistencies or ambiguities in the

evidence. Overall, I am not left to guess about how the ALJ arrived at his conclusions. Thus, the

ALJ satisfied his responsibility under SSR 96-8p.

### Treating Physician Opinion

Overstreet also objects to the ALJ's decision to give "some weight" to the opinions of

consultative examiner William Humphries, M.D., and not adopt all of Dr. Humphries' suggested

limitations. Id.  Overstreet further asserts that the ALJ does not explain how he arrived at the

conclusion that Overstreet is capable of performing light work. Pl. Br. Summ. J. at 17.

Dr. Humphries examined Overstreet on May 1, 2013. R. 262–64.  Overstreet reported left

low back pain, worse with bending, lifting, standing and walking. R. 262.  Overstreet stated that

he cannot walk more than half a mile on level ground without stopping due to low back pain. Id.

Upon examination, Overstreet's neck and back were non-tender, except for his lower left lumbar

region; he had negative straight leg raises; and no significant tenderness in his upper or lower

extremity joints, aside from mild enlargement of some of his MCP and IP joints. R. 263.

Overstreet moved on and off the examining table without difficulty, he had adequate fine

manipulation, normal gait, and did not require assistance to ambulate. Id.  His strength was

within normal limits and he had no motor or sensory loss in his extremities. Id.  Dr. Humphries

diagnosed hypertension, diminished hearing, chronic lumbar strain, COPD and mild

degenerative disc disease in both hands and feet. R. 264.  Dr. Humphries determined that

Overstreet was capable of medium work; specifically: sitting six hours in an eight hour day;

standing and walking six hours in and eight hour day; lifting 50 pounds occasionally and 20

16

pounds frequently; occasional climbing kneeling, and crawling, and should avoid heights, hazards and fumes. Id.

The ALJ reviewed Dr. Humphries' opinion and gave it some weight, noting that Dr. Humphries conducted a thorough examination of Overstreet and offered objective clinical findings to support his diagnoses and conclusions regarding postural and environmental limitations. R. 27. The ALJ found, however, that Overstreet was more limited than Dr. Humphries suggested, based upon his ongoing complaints of back pain and diagnostic imaging showing degenerative disc disease. Id. Thus, the ALJ set forth an RFC that is more restrictive than the limitations suggested by Dr. Humphries. R. 17.

The ALJ also reviewed the assessments given by state agency medical consultant Robert McGuffin, M.D., and Carolina Bacani-Longa, M.D. R. 27. On May 16, 2013, Dr. McGuffin reviewed Overstreet's records and determined that he was capable of performing light work with frequent climbing ramps or stairs and balancing, occasional performance of other postural activities, and no concentrated exposure to hazards and irritants. R.66–68. Upon reconsideration, on November 6, 2013, Dr. Bacani-Longa reviewed Overstreet's records and determined that he could perform medium level work and had no pulmonary limitations. R. 87–80. The ALJ gave Dr. McGuffin's assessment great weight, finding it well supported by medical evidence, including clinical findings and other objective evidence, and consistent with the record as a whole. R. 28. The ALJ gave Dr. Bacani-Longa's assessment little weight, "because evidence shows that the claimant's combined impairments, including COPD, reasonably limit him to work that is light in exertion, with postural limitations and avoidance of exposure to irritants and hazards." Id.

17

Thus, the ALJ reviewed each of the medical opinions, assigned each weight and provided reasons for the weight given.  The ALJ gave the greatest weight to the most restrictive physical RFC opinion in the record.  Overstreet does not argue that the ALJ should have given greater weight to the opinions of Drs. Humphries or Bacani-Longa, but instead simply asserts that the ALJ "failed to provide any other explanation as to how he arrived at his conclusion that plaintiff is capable of performing work at the light exertional level."  Pl. Br. Summ. J. at 17.  Overstreet's assignment of error is without basis.

### Credibility[5]

Overstreet also asserts that the ALJ failed to give specific reasons for his finding that Overstreet's statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely credible. Pl. Br. Summ. J. at 18–19.  After a review of Overstreet's treatment records and allegations of disability, the ALJ stated:

> [a]fter careful consideration of the evidence, [I] find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the

---

[5] I note that in March 2016, the Social Security Administration superseded the language of SSR 96-7p when it ruled in SSR 16-3p that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. SSR 16-3p at *1. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

Here, SSR 16-3p was issued after the ALJ's consideration of Overstreet's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of the claimant's "credibility." See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); Ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D.W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016); Lopez v. Colvin, No. 3:16CV24 (JAG), 2016 WL 6594107, at *4 (E.D. Va. Oct. 13, 2016) (noting "[t]he Agency does not have the power to engage in retroactive rulemaking"). However, I note that the methodology required by both SSR 16-3p and SSR-7p, are quite similar. Under either, the ALJ is required to consider Carr's report of his own symptoms against the backdrop of the entire case record; in SSR 16-3p, this resulted in a "credibility" analysis, in SSR 16-3p, this allows the adjudicator to evaluate "consistency."

> reasons explained in this decision.  The claimant's documented treatment history,
> including subjective complaints over time, observations by treating providers,
> objective findings, and overall course of treatment, show that the claimant's
> combined impairments reasonably cause some exertional and non-exertional
> limitations, consistent with the above residual functional capacity.  The evidence
> fails to establish greater functional limitations.

R. 25–26.  The ALJ outlined his reasons for this determination, referencing Overstreet's

treatment history, the findings on physical examination, Dr. Humphries' findings during his

consultative examination, and the medical opinions in the record.  R. 26.  The ALJ also noted

that Overstreet gave somewhat conflicting accounts of his activities of daily living, with two

function reports describing increasing severity of symptoms, which contrast his statement to a

treating provider that he was out chopping wood with family/friends. R. 15–16.   The ALJ also

noted that Overstreet's treatment notes do not discuss any particular difficulty with activities of

daily living due to psychiatric impairments. R. 16.  See Dolfax v. Astrue, 7:09–cv–67, 2010 WL

1488116, at *11 (E.D.N.C. Mar. 18, 2010) (finding that activities of daily living are a highly

probative factor in determining the credibility of a claimant's allegations) (citing Gross v.

Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)).

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies

between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d

635, 638 (4th Cir. 1996). Overstreet's subjective allegations of his disabling pain, symptoms, and

impairments are not conclusive on their own; rather, subjective complaints and statements of

symptoms, like all other evidence of disability, are considered in the context of the record as a

whole. 20 C.F.R. §§ 404.1529, 416.929 (2014). If a claimant's statements are inconsistent with

other evidence, the ALJ may find them less than fully credible and weight them accordingly. See

SSR 96–4p, (July 2, 1996); SSR 96–7p, (July 2, 1996).

19

In this case, the ALJ found that Overstreet's statements regarding the severity of his limitations and pain were not wholly credible because they were not supported by the objective medical evidence, his treatment history, and his daily activities. R. 25–28. The ALJ's opinion includes a detailed consideration of Overstreet's medical history along with Overstreet's own allegations. A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). Substantial evidence supports the ALJ's determination that Overstreet's testimony is only partially credible, and that Overstreet is capable of performing work at the level stated in the ALJ's opinion.

Overall, Overstreet's argument is merely an invitation to re-weigh the evidence and conclude that Overstreet suffers from impairments which more severely limit his functional capacity than the RFC found by the ALJ.  Overstreet's argument misses the review function of this court—whether substantial evidence supports the ALJ's determination.  Overstreet does not, and cannot, point to any improper legal standard the ALJ relied upon or demonstrate that the ALJ failed to consider contradictory evidence or failed to explain the decision reached.  It is the ALJ's province to weigh the evidence, determine how to handle conflicting evidence, and reach a conclusion of whether Overstreet is disabled.  The ALJ in this case fulfilled his duties and substantial evidence supports the RFC determination and the conclusions as to Overstreet's credibility. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

## **RECOMMENDED DISPOSITION**

For the foregoing reasons, I recommend affirming the Commissioner's decision,

**GRANTING** the defendant's motion for summary judgment, and **DENYING** Overstreet's

motion for summary judgment.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United

States District Judge, and to provide copies of this Report and Recommendation to counsel of

record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any

objections to this Report and Recommendation within fourteen (14) days hereof. Any

adjudication of fact or conclusion of law rendered herein by me that is not specifically objected

to within the period prescribed by law may become conclusive upon the parties. Failure to file

specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as

well as to the conclusion reached by me may be construed by any reviewing court as a waiver of

such objection.

Enter:  January 3, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge